Marc L. Godino (#182689)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  mgodino@glancylaw.com

*Attorneys for Plaintiff*
[Additional Counsel On Signature Page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY KESKINEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDGEWELL PERSONAL CARE CO.; EDGEWELL PERSONAL CARE, LLC; EDGEWELL PERSONAL CARE BRANDS, LLC; PLAYTEX PRODUCTS, LLC; AND SUN PHARMACEUTICALS, LLC,<br><br>Defendants. | Case No.:<br><br>**CLASS-ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

CLASS ACTION COMPLAINT

Plaintiff Kelly Keskinen (or "Plaintiff") brings this action on behalf of herself and all others similarly situated, i.e., purchasers of Banana Boat Kids MAX Protect & Play Lotion Sunscreen with an advertised SPF of 100, and Banana Boat Kids MAX Protect & Play Continuous Clear Spray Sunscreen with an advertised SPF of 100 (both products are collectively referred to below as "Banana Boat Kids SPF 100"). Plaintiff brings this action against Defendants Edgewell Personal Care Company; Edgewell Personal Care, LLC; Edgewell Personal Care Brands, LLC; Playtex Products, LLC; and Sun Pharmaceuticals, LLC (collectively, "Defendants").

## NATURE OF THE ACTION

1.      Plaintiff's claim is premised on several false or misleading claims that Defendants make on the labels of its Banana Boat Kids SPF 100 sunscreen. In short, Defendants sell this product as an SPF 100 sunscreen—designed for children—when in fact its SPF is well under 100, and actually in the 20s. Plaintiff and the class purchased this sunscreen without knowing that the SPF claims were false, and they paid a premium for this sunscreen based on its purported SPF level. Plaintiff and the class bring this action in order to recoup these overcharges.

2.      More specifically, Defendants manufacture and sell Banana Boat Kids SPF 100: a sunscreen lotion explicitly intended for children with an advertised SPF of 100. Defendants also charge a premium for this higher level of protection. While Banana Boat Kids SPF 100 sells for $2.25/oz., Defendants' SPF 50 sunscreen for children sells for less than half that, and their SPF 30 products are even cheaper.

3.      Ms. Keskinen—under the assumption that she was in fact purchasing a sunscreen with an SPF of 100—purchased Banana Boat Kids SPF 100 several times, for her grandchildren, over the course of the past four years. However, independent studies have recently revealed that Defendants' sunscreen does *not* contain an SPF of 100—it contains an SPF of 24.

4.      Ignoring the fact that Ms. Keskinen was misled into purchasing a product that could have physically harmed her grandchildren, Defendants' sunscreen was drastically overpriced. In fact, given that its SPF was less than 30, and the product was intended for children, Banana Boat Kids SPF 100 may not have been worth anything at all.

5.      Given the above, Ms. Keskinen, on behalf of herself and the class, seeks a return of the overcharges paid for Banana Boat Kids SPF 100, and to enjoin Defendants from continuing to sell a children's sunscreen that lacks the sun-protection attributes advertised on its label.

6.      Plaintiff seeks to represent a class consisting of thousands or hundreds of thousands of consumers who have purchased Banana Boat Kids SPF 100 based upon its falsely or misleadingly advertised SPF number. Plaintiff asserts claims under California's Unfair Competition Law, Consumer Legal Remedies Act, and False Advertising Law, as well as claims for breach of an express warranty and breaches of implied warranties of merchantability. She also asserts claims for common-law fraud, negligent misrepresentation, and restitution/unjust enrichment.

Ms. Keskinen seeks damages and equitable remedies, including injunctive relief, for herself and members of the putative classes, which are defined below.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, to a reasonable probability; and (iii) there is minimal diversity because at least one Plaintiff is a citizen of a state different from at least one Defendant.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 inasmuch as (i) many of the acts and transactions giving rise to this action occurred in this District; (ii) Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the marketing, distribution, and sale of their products in this District; and (iii) Defendants currently do substantial business in this District.

## PARTIES

9.      Plaintiff Kelly Keskinen is a resident of Riverside County, California. As noted in more detail below, she purchased Banana Boat Kids SPF 100 several times over the last four years, from various stores in California.

10.      Defendant Edgewell Personal Care Company is a foreign business corporation with its headquarters and principal place of business located in Shelton, Connecticut. Edgewell Personal Care Company is licensed to and does conduct

business throughout the United States, including the State of California. Edgewell Personal Care Company manufactures and markets personal-care products—including Banana Boat Kids SPF 100—to consumers in California and across the United States.

11.     Defendant Edgewell Personal Care Brands, LLC is a Delaware Limited Liability Corporation with its headquarters in St. Louis, Missouri. Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of and/or is 100% controlled by Edgewell Personal Care Company.

12.     Defendant Edgewell Personal Care, LLC is a Delaware Limited Liability Corporation with its headquarters in St. Louis, Missouri. Edgewell Personal Care, LLC is a wholly-owned subsidiary of and/or is 100% controlled by Edgewell Personal Care Company.

13.     Defendant Playtex Products, LLC is a Delaware foreign limited-liability company with its headquarters and principal place of business located in Shelton, Connecticut. Playtex Products, LLC is licensed to and does conduct business throughout the United States including the State of California. Playtex Products, LLC markets Banana Boat sunscreen as one of its brands, including Banana Boat Kids SPF 100. Playtex Products, LLC is a subsidiary of Edgewell Personal Care Company.

14.     Defendant Sun Pharmaceuticals, LLC is a Delaware foreign limited-liability company with its headquarters and principal place of business located in

Dover, Delaware. Sun Pharmaceuticals, LLC is licensed to and does conduct business throughout the United States, including the State of California. Sun Pharmaceuticals, LLC is a subsidiary of Edgewell Personal Care Company.

15.     Together, Defendants Edgewell Personal Care Company; Edgewell Personal Care, LLC; Edgewell Personal Care Brands, LLC; Playtex Products, LLC; and Sun Pharmaceuticals, LLC jointly manufacture, distribute, advertise, label, and sell Banana Boat Kids SPF 100 in California and throughout the United States, with each defendant jointly determining that each such container of the product would bear the name "Banana Boat" and would list "SPF 100" on each uniformly worded product label.

## STATEMENT OF FACTS

**A.    A sunscreen's SPF number is supposed to accurately reflect the strength of that sunscreen.**

16.     Consumers like Plaintiff buy sunscreen—whether for themselves or the children in their care—to prevent sunburns and other harmful health effects resulting from exposure to UV radiation. In addition to the red rash that commonly develops after being overexposed to the sun, overexposure can ultimately result in the development of several forms of skin cancer, including melanoma, which can be fatal. Such sun-induced health problems have, in fact, been on the rise for several decades now. According to the National Cancer Institute, the prevalence of

melanoma has tripled since the 1970s, and its fatality rate has doubled.[1]

17.    Children are particularly susceptible to sunburn. Not only do they spend more time outdoors than adults, their skin is thinner and more sensitive than an adult's, so they burn more quickly.[2] What's worse, according to John Hopkins' Medical Library, overexposure to sunlight before the age of 18 "is mo[re] damaging to the skin" than overexposure at a later age, and repeated severe sunburns—as a child—can increase the likelihood of an individual's developing skin cancer later in life.[3]

18.    Sunscreen is designed to prevent burning and decrease the skin's exposure to UV radiation. It works by absorbing this radiation or reflecting it away from the skin.

19.    A sunscreen's Sun Protection Factor ("SPF") informs consumer of the level of sunburn protection provided by the sunscreen. SPF is a standardized rating system for measuring the fraction of sunburn-producing UV rays that reach the skin,

---

[1] ENVIRONMENTAL WORKING GROUP, *Skin Cancer on the Rise*, http://www.ewg.org/sunscreen/report/skin-cancer-on-the-rise/#.WdaAhVuPKHs (last visited Oct. 12, 2017).

[2] SUNRISE CHILDREN'S HOSPITAL, *Why are children more susceptible to sunburns?* (Aug. 22, 2017), http://blog.sunrisechildrenshospital.com/blog/2017/august/why-are-children-more-susceptible-to-sunburns-.aspx.

[3] JOHN HOPKINS MEDICINE, Health Library, *Sunburn and Children*, http://www.hopkinsmedicine.org/healthlibrary/conditions/pediatrics/sunburn_and_children_90,P01929   (last visited Oct. 12, 2017).

which is based on objective evidence and standardized protocols. The SPF number indicates the approximate measure of time that a person who has applied the sunscreen can stay in the sun without getting burned. SPF 100, for example, will allow a person to stay in the sun 100-times longer without burning than if that person were wearing no protection at all. Accordingly, a sunscreen with a higher SPF—such as SPF 100—will filter out more UV radiation and provide more protection than a sunscreen with a lower SPF.

20.    Almost every medical organization in the country recommends that individuals regularly use sunscreen to protect themselves from the damaging effects of UV radiation. They also recommend minimum levels of SPF. The American Academy of Dermatologists,[4] for example, as well as John Hopkins[5] and the Nemours Foundation,[6] all recommend that individuals use a sunscreen with an SPF

---

[4]    AMERICAN ACADEMY OF DERMATOLOGY, *Sunscreen FAQs*, https://www.aad.org/media/stats/ prevention-and-care/sunscreen-faqs (last visited Oct. 12, 2017).

[5]    JOHN HOPKINS MEDICINE, Health Library, *Sunburn and Children*, http://www.hopkinsmedicine. org/healthlibrary/conditions/pediatrics/sunburn_and_children_90,P01929    (last visited Oct. 12, 2017).

[6]    KIDS HEALTH FROM NEMOURS, *How to Chose and Use Sunscreen*, http://kidshealth.org/en/ parents/sunscreen.html (last visited on Oct. 12, 2017).

of 30 or higher. Consumer-advocacy groups have also noted that the most effective sunscreens for children contain a minimum SPF of 30.[7]

**B.     Banana Boat markets a kids' sunscreen with an SPF of 100.**

21.   Defendants produce, manufacture, sell, and distribute an SPF 100 sunscreen lotion designed specifically for children: Banana Boat Kids SPF 100. Banana Boat Kids SPF 100 is available online and in hundreds of retail stores throughout the country, including but not limited to Walgreens, CVS, Overstock.com, Jet.com, Toys "R" Us, Walmart, eBay, and Target.

22.   Defendants repeatedly emphasize that this sunscreen is intended specifically for children. In addition to the large "KIDS" description on the products' labels (see below), Banana Boat touts this product on its website as providing "our maximum lotion protection for active kids, protecting them from 99% of UVB rays."[8] Banana Boat also claims that this sunscreen is "Pediatrician-tested," and its image is accompanied by two smiling children. (*Id.*)

---

[7] Jenny Luna, *Report: Most Sunscreens are Bad, But These 7 Sunscreen Are the Worst*, MOTHER JONES (May 24, 2016), http://www.motherjones.com/environment/2016/05/sunscreen-best-uva-skin-cancer-protection-2016/.

[8] BANANA BOAT, Kids and Baby, http://www.bananaboat.com/products/kids-spf100-sunscreen-lotion (last visited Oct. 12, 2017).

23.     Moreover, every container of this product bears a uniformly worded label (1) describing the product as "SPF 100" and (2) containing a large icon with the number "100" in its center. This is evident in the following figure:

 

24.     On several occasions over the past four years, including March 17, 2017, June 16, 2017 and August 16, 2017, Ms. Keskinen purchased Banana Boat Kids SPF 100, which she intended to use on her grandchildren. She made these purchases in California, typically at a CVS or Walmart near her home in Wildomar, California.

25.     In deciding to buy Defendants' sunscreen, Ms. Keskinen saw and relied on the 100 SPF claims on its label. The degree of sun protection provided by a children's sunscreen is a—if not the most—material element in a guardian's

decision to purchase a particular sunscreen; a product whose function is to protect children from sunburn and UV damage.

26.     Plaintiff's reliance on the accuracy of the Banana Boat Kids SPF number was also reasonable. There is nothing unusual about a consumer believing in the accuracy of advertised SPF levels, and Plaintiff here had no reason to suspect that Banana Boat Kids SPF 100 contained less UV protection than Defendants claimed. Obviously, the true SPF of Banana Boat Kids SPF 100 is not readily apparent to consumers; this is specialized knowledge uniquely possessed by Defendants as the distributors, marketers, producers, manufacturers, and sellers of the product.

27.     Indeed, Banana Boat Kids SPF 100 is a "credence good" because its properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase, and such properties and benefits are made known to consumers only through the information provided on the label by the product's manufacturer and distributor. *See* Richard A. Posner, *An Economic Approach to the Law of Evidence*, 51 STAN. L. REV. 1477, 1489 (1999) ("A good is a credence good if the consumer cannot readily determine its quality by inspection or even use, so that he has to take its quality 'on faith.'").

28.     As such, in purchasing Banana Boat Kids SPF 100, Plaintiff and the class members necessarily and justifiably relied upon the written statements on the product as accurate.

**C.    Independent studies indicate that Banana Boat Kids SPF 100 contains an SPF of only 24.**

29.    In the summer of 2017, an independent lab tested Banana Boat Kids SPF 100. The lab's testing complied with all FDA testing methods embodied in FDA Final Rule, 21 CFR Parts 201 and 310 (Federal Register/Vol 76, No 117/Friday, June 17, 2011/Rules and Regulations, including 21 CFR 201.327).

30.    The lab's test revealed that Banana Boat Kids SPF 100 sunscreen lotion contains an SPF of *24*—not 100, as Defendants indicate on their labels.

31.    Because  the actual SPF of Banana Boat Kids SPF 100 is far below 100, Defendants' claims that the product has an SPF of 100 are false or misleading.

32.    Defendants' claims were intentionally false or misleading since Defendants—as one of the largest and most experienced sunscreen developers and manufacturers in the country—would have been aware that the true SPF of Banana Boat Kids SPF 100 was much lower than 100.

33.    Defendants made their SPF misrepresentations with the intent that consumers rely upon them, in order to boost Banana Boat Kids 100 sales and increase the price they could charge for the product. As noted above, the SPF 100 claim figures prominently on Defendants' label, and because children's caretakers are concerned with the health of the children their looking after, they would generally be willing to pay more for sunscreens that promise higher levels of UV protection.

34.     Put differently, by misrepresenting the SPF value of Banana Boat Kids SPF 100, Defendants were able to charge more for this product than they otherwise would have been, i.e., they were able to charge a premium for this product, which Plaintiff paid.

35.     This idea is borne out by a survey of Defendants' own products, which indicates that their false SPF claims allowed them to charge a substantial premium for Banana Boat Kids SPF 100. Banana Boat Kids SPF 100 retails at Walmart for $2.25/oz.[9] Banana Boat Kids SPF 50, however, sells for less than half that: $0.87/oz.[10] And while Defendants don't even make an SPF 30 for children, what SPF 30 products they do make sell for as low as $0.64/oz.[11] In other words, a 4-oz. tube of Banana Boat Kids SPF 100, which sells for $8.94, would only have been worth $2.57 (at most) had its SPF been accurately advertised. This means that at

---

[9]  WALMART ($8.94 for a 4oz. tube of Banana Boat Kids SPF 100), https://www.walmart. com/ip/Banana-Boat-Kids-Max-Protect-Play-Sunscreen-Lotion-SPF-100-4-oz/17757457 (last visited Oct. 12, 2017).

[10]  WALMART ($6.97 for an 8oz. tube of Banana Boat Kids SPF 50), https://www.walmart. com/ip/Banana-Boat-Kids-Sunscreen-Lotion-UVA-UVB-Protection-Broad-Spectrum-SPF-50-8-fl-oz/10448307 (last visited Oct. 12, 2017).

[11]  WALMART ($6.44 for a 10oz. tube of Banana Boat Sports Performance Sunscreen Lotion SPF 30), https://www.walmart.com/ip/Banana-Boat-Sport-Performance-Sunscreen-Lotion-SPF-30-10-0-FL-OZ/108183182 (last visited Oct. 12, 2017).

least 71% of the price of Banana Boat Kids SPF 100 is attributable to its inflated SPF.

36.     But this assumes that a children's sunscreen with an SPF of 24 is valuable at all. As noted above, a number of medical associations recommend using an SPF of 30 or greater; the top children's sunscreens all contain SPFs of 30 or greater; and Defendants themselves don't even manufacture a children's sunscreen with an SPF lower than 50. There is, in other words, no (or only a limited) market for children's sunscreen with SPFs of less than 30, rendering Banana Boat Kids SPF 100 essentially worthless.

37.     As such, had Plaintiff known that the actual SPF rating of Banana Boat Kids SPF 100 was substantially lower than 100, she would not have purchased the product, or she would not have paid as much as she did for the product. In other words, Plaintiff suffered economic injury by being misled into paying a premium for Defendants' sunscreen; by being misled into purchasing an essentially valueless product; by being deprived of the full intended use of the purchased product; and by being deprived of the benefit of the bargain that she was promised by Defendants.[12]

---

[12] Plaintiff is *not* bringing claims on behalf of herself or the putative class based on any physical harm that they might have suffered as a result of using Banana Boat Kids SPF 100.

38.     Defendants' false or misleading SPF statements thus directly and proximately resulted in economic harm to Plaintiff. She now seeks all appropriate relief, as described below.

## CLASS ALLEGATIONS

39.     Plaintiff repeats and realleges each allegation above as if set forth fully herein.

40.     Plaintiff seeks to bring this case as a class action, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

41.     Plaintiff seeks certification of a nationwide class (the "Nationwide Class") defined as follows:

> All persons who purchased Banana Boat Kids SPF 100 sunscreen in the United States between October 21, 2011 and the present.

42.     Additionally, or alternatively, Plaintiff seek certification of the following sub- class (the "California Subclass"), defined as follows:

> All persons who purchased Banana Boat Kids SPF 100 sunscreen in California between October 21, 2013 and the present.

43.     Excluded from any class are Defendants, their affiliates, employees, officers, and directors; persons or entities that purchased the sunscreen for purposes of resale; and the Judge(s) assigned to this case.

44.     Plaintiff reserves the right to amend or modify the proposed class definitions in connection with a motion for class certification or as warranted by discovery.

45.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

46.     The members of the class and subclass for whose benefit this action is brought are so numerous that joinder of all members is impracticable. Upon information and belief, the proposed Nationwide Class and California Subclass are each composed of thousands of individuals.

47.     No violations alleged in this complaint are a result of any oral communications or individualized interactions of any kind between class members and Defendants. Rather, all claims in this matter arise from the identical, false, written affirmative statements on the product label as outlined in detail herein.

48.     There are common questions of law and fact affecting the rights of all class members,[13] including the following:

- the actual SPF of Banana Boat Kids SPF 100 sunscreen lotion;
- whether Defendants' labeling of Banana Boat Kids SPF 100 constituted false, affirmative statements;
- whether each Defendant was aware that Banana Boat Kids SPF 100 had an actual SPF that was substantially lower than 100; and
- the date that each Defendant became aware that Banana Boat Kids SPF 100 had an actual SPF that was substantially lower than 100.

49.     Plaintiff is a member of the Nationwide Class and California Subclass that she seeks to represent.

---

[13] The term "class" as used herein includes the Nationwide Class and the California Subclass.

50.     Plaintiff's claims are typical of the claims of all class and subclass members. Plaintiff's claims—as well as those of the class and subclass—arise from the same identical, false, written statement of affirmative fact on the Banana Boat Kids SPF 100 label as described herein. Further, all claims of Plaintiff and the class are based on the same legal theories.

51.     Plaintiff has no interests antagonistic to, or in conflict with, the class or subclass.

52.     Plaintiff will thoroughly and adequately protect the interests of the class and subclass that she seeks to represent, having retained qualified and competent legal counsel to represent themselves and the class and subclass.

53.     Defendants have acted and refused to act on grounds generally applicable to the class and subclass, thereby making appropriate injunctive and declaratory relief for the class as a whole.

54.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

55.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy. Among other things, the damages suffered by each class member are modest, amounting to less than $20 per container purchased, rendering individual actions economically infeasible.

56.     Common questions will predominate, and there will be no unusual manageability issues.

## COUNT I
### CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.
*On behalf of the California Subclass*

57.     Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

58.     The Unfair Competition Law, California Business & Professions Code §§ 17200, et seq. (the "UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice, which can include false or misleading advertising.

59.     In the course of conducting their business, Defendants violated the UCL by—among other things—claiming that Banana Boat Kids SPF 100 contained an SPF of 100, when in fact its SPF was substantially lower.

60.     These false or misleading SPF claims constitute "fraudulent" business practices under the UCL. As noted in more detail above, and in the "Fraud" section below, Defendants intentionally mislabeled their Banana Boat Kids Sunscreen SPF 100 as possessing an SPF of 100, when in fact the SPF was far below 100; this false labeling has always been included on the sunscreen; and Plaintiff observed this labeling every time she purchased the product, which was several times over the last four years, including March 17, 2017, June, 16, 2017, and August 16, 2017; and Plaintiff made these purchases at several stores in California, including CVS and Walmart.

61.     Also as noted above, Plaintiff justifiably relied on Defendants' SPF claims, which can't be verified on sight and were made by one of the nation's

largest and most well established sunscreen manufacturers. For similar reasons, Defendants' SPF claims were likely to deceive members of the public.

62.     In addition, Defendants' misleading SPF claims constituted "unfair" business acts or practices under the UCL. These SPF misrepresentations constitute deceptive advertising and the omission of material facts, and thereby offend an established public policy. Misrepresenting the SPF of a children's sunscreen also constitutes immoral, unethical, oppressive, or unscrupulous activities that are substantially injurious to consumers, and whatever utility Defendants derived from mislabeling their sunscreen is outweighed by the resulting consumer deception and overcharges.

63.     There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

64.     Defendant's conduct is also unlawful in that it violates the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.,* the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.,* and California's express warranty law, Cal. Com. Code § 2313.

65.     As a result of Defendants' false or misleading SPF claims, Plaintiff and the class have been harmed. As described above, had Plaintiff been aware of Banana Boat Kids SPF 100's actual SPF, she would not have paid as much as she did for the product, or would not have purchased it at all.

66.     As a result of their deception, Defendants have been able to reap unjust revenue and profit in violation of the UCL.

67.     Unless restrained and enjoined, Defendants will continue to misrepresent the SPF of Banana Boat Kids SPF 100. Accordingly, injunctive relief is appropriate for Plaintiff and the California Subclass members.

68.     As a result of the above, Plaintiff and the other California Subclass members seek restitution and disgorgement of all money unlawfully obtained from members of the California Subclass, as well as injunctive relief and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

### COUNT II
**CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL. CIVIL CODE §§ 1750, *ET SEQ.***
***On behalf of the California Subclass***

69.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

70.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* (the "CLRA"). Plaintiff and each member of the California Subclass is a consumer as defined by California Civil Code § 1761(d).

71.     Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and provides "goods" within the meaning of Cal. Civ. Code §§ 1761(a) and 1770. Defendant's customers, including Plaintiff and Class members, are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770. Each

purchase of Defendant's Banana Boat Kids SPF 100 by Plaintiff and each Class member constitutes a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

72.     Defendants violated and continue to violate the CLRA by claiming that Banana Boat Kids SPF 100 has an SPF of 100, when in fact the SPF is much lower. This misrepresentation constitutes, at least, the following proscribed practices under California Civil Code § 1770(a):   "(5) [r]epresenting that [products] have . . . characteristics, . . . uses [or] benefits . . . which they do not have"; "(7) [r]epresenting that [products] are of a particular standard, quality, or grade . . . if they are of another"; and "(9) [a]dvertising goods . . . with intent not to sell them as advertised."

73.     Defendants knew or were in a position to know—both from their own product knowledge and independent testing—that the SPF of Banana Boat Kids SPF 100 fell far short of this advertised level.

74.     Plaintiff reasonably relied on—and consumers like Plaintiff were likely to be deceived by—Defendants' SPF misrepresentations. As noted above, consumers generally take a sunscreen's SPF number at face value, primarily because it can only be determined after rigorous testing and is not self-evident at the point of purchase. Defendants are also a national, well-established sunscreen manufacturer that would presumably accurately determine—and honestly advertise—its products' SPF numbers.

75.    Defendants intended that Plaintiff and the other California Subclass members would rely on their false or misleading SPF representations, and any reasonable consumer would deem the false or misleading representations material to the purchase of Banana Boat Kids SPF 100.

76.    California Civil Code § 1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate California Civil Code § 1770.

77.    Plaintiff seeks restitution of all monies received by Defendants as a result of sales from Banana Boat Kids SPF 100 as provided in California Civil Code § 1780. Plaintiff is informed and believes that the amount of said restitution is unknown at this time, but will seek relief to amend this Complaint at the time of trial when the same has been ascertained.

78.    Plaintiff seeks injunctive relief for the CLRA claims alleged in this Complaint.

79.    Under the requirements of California Civil Code §1782(a), Plaintiff's counsel have served on Defendants, contemporaneously with the filing of this Complaint, CLRA notice letters. Plaintiff will amend this Complaint to assert claims for additional relief under the CLRA in the event Defendants do not rectify these issues within the appropriate time period outlined in the CLRA.

80.    Defendants' wrongful business practices constituted and constitute, a continuing course of conduct in violation of the Consumers Legal Remedies Act since Defendants are still representing that Banana Boat Kids SPF 100 has

characteristics, uses, benefits and abilities which are false and misleading and have injured Plaintiff and members of the Class and Subclasses.

81.    Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit B is an affidavit showing that this action has been commenced in the proper forum.

## COUNT III
### CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*
### *On behalf of the Nationwide Class*

82.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

83.    California's False Advertising Law (the "FAL")—Cal. Bus. & Prof. Code §§ 17500, *et seq.*—prohibits "any statement" that is "untrue or misleading" and made "with the intent directly or indirectly to dispose of" property or services.

84.    As noted above, Defendants falsely claimed that their Banana Boat Kids SPF 100 had an SPF of 100, when in fact that SPF was far below 100.

85.    Further, Defendants made this misrepresentation in order to boost sales of their Banana Boat Kids SPF 100.

86.    Reasonable consumers, like Plaintiff, were likely to be misled by this misrepresentation. Again, as noted above, there is no means of verifying an SPF prior to purchase, and reliance on manufacture SPF claims is standard.

87.    Plaintiff also suffered economic injury as a result of Defendants' SPF misrepresentations. As noted above, but for Defendants' false SPF claims, Plaintiff

would not have paid as much as she did for Banana Boat Kids SPF 100; i.e., she was misled into paying a price premium for that sunscreen.

88.     On account of Defendants' misrepresentations, Plaintiff and the California Subclass have been injured in the amount of the overcharge that they paid for Banana Boat Kids SPF 100.

### COUNT IV
### FRAUD / INTENTIONAL MISREPRESENTATION
*On behalf of the Nationwide Class and California Subclass*

89.     Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

90.     Defendants made a misrepresentation to Plaintiff. The label on Banana Boat Kids SPF 100 claims an SPF of 100, but the product's actual SPF is far below 100; i.e., Defendants falsely claimed that the product's SPF was higher than it really was.

91.     Defendants' knew that this misrepresentation was false. As the manufacturers of Banana Boat Kids SPF 100, they tested this product and therefore knew that its actual SPF was well below 100.

92.     Defendants intended to misrepresent the SPF of Banana Boat Kids SPF 100. The SPF 100 number appears at least twice on the labeling that Defendants designed, which has been in circulation for years without any attempts by Defendants to correct that number. And as just noted above, Defendants *knew* that this information was false, but continued to disseminate it, presumably because such

SPF claims allowed it to sell more of the product at higher prices (also as noted above).

93.     Plaintiff justifiably relied on Defendants' SPF number. Again, as noted above, consumers generally take a sunscreen's SPF number at face value, primarily because it can only be determined after rigorous testing and is not self-evident at the point of purchase. Defendants are also a national, well-established sunscreen manufacturer that would presumably accurately determine—and honestly advertise—its products' SPF numbers.

94.     Plaintiff was damaged by Defendants' misrepresentations. As noted above, Defendants' false SPF claims misled Plaintiff into paying more for Banana Boat Kids SPF 100 than she otherwise would have, or she would not have purchased the (essentially valueless) product at all.

95.     Also as noted above, the particularities of Defendants' fraud are as follows:

     a) *Who*: Defendants, as identified above.

     b) *What*: Defendants misrepresented the SPF of their Banana Boat Kids SPF 100 sunscreen. Defendants claim on this product's label—in at least two places, as indicated above—that its SPF is 100, when it's only 24.

     c) *When*: The labels of Banana Boat Kids SPF 100 have contained false SPF 100 representations since the products were introduced. Plaintiff saw this misrepresentation every time she purchased the product, which was several times over the last four years, with the most recent occurrence being on March 17, 2017, June 16, 2017, and August 16, 2017, 2017.

d) *Where*: Plaintiff purchased Banana Boat Kids SPF 100 at several stores near her home in Wildomar, California, including CVS and Walmart. The product is available nationwide.

e) *How*: Defendants designed the labeling of Banana Boat Kids 100—labeling that contains the SPF misrepresentations—and sell it to stores throughout the country, in order to be sold, in turn, to consumers. Plaintiff viewed the SPF 100 claims on the label while in-store, before purchasing the product. Plaintiff paid approximately $8 per purchase.

96.     In light of the above, Plaintiff seeks damages on behalf of herself and the class, in the amount of any overcharges paid for the product, which would include—given the near-0 value of less-than-30-SPF children's sunscreens—the entire purchase price of Banana Boat Kids SPF 100.

## COUNT V
### NEGLIGENT MISREPRESENTATION
#### *On behalf of the Nationwide Class and California Subclass*

97.     Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

98.     Defendants misrepresented a fact. They advertised their Banana Boat Kids SPF 100 sunscreen as possessing an SPF of 100, when in fact the SPF was much less than this.

99.     There were no reasonable grounds for Defendants to believe that this misrepresentation was true. As experienced sunscreen manufacturers responsible for testing the sunscreens that they sell, Defendants should have known that Banana Boat Kids SPF 100 did not in fact contain an SPF of 100.

100.   This misrepresentation was material. Caregivers purchase children's sunscreen to protect children from the sun. Accordingly, the degree of sun protection advertised on Banana Boat Kids SPF 100 was a material—if not the sole—factor in Plaintiff's decision to purchase Defendants product. And this would be true of any reasonable consumer.

101.   Defendants intended that consumers, like Plaintiff, would rely on the SPF 100 claim that they included on the labels of Banana Boat Kids SPF 100. Again, that claim is designed solely for consumers, like Plaintiff, who will ultimately purchase and use the sunscreen on their children.

102.   Plaintiff's reliance on this SPF claim was justifiable. Again, Plaintiff had no way of verifying this claim before purchase, and consumers generally rely on advertised SPFs instead of paying the substantial costs to have them tested by specialty labs.

103.   Plaintiff was proximately damaged by Defendants' misrepresentations. Again, but for Defendants' SPF claims, Plaintiff would not have paid as much as she did for Banana Boat Kids SPF 100 sunscreen, or she would not have purchased the product at all.

104.   Further, Defendants were in a "special relationship" with Plaintiff, and thus owed her a duty of care:

a) The SPF misrepresentations on Defendants' Banana Boat Kids SPF 100 labels were intended *solely* to affect the purchasing decisions of

consumers, like Plaintiff, who will ultimately base their decision on these SPF claims and who ultimately use the product on their children.

b) It was foreseeable that, by misrepresenting an SPF number as being higher than it is, and charging a premium for that added protection, Defendants would economically harm consumers by misleading them into paying an unjustified premium for a sunscreen that lacked the advertised protection.

c) This harm was certain.

d) Defendants' decision to label Banana Boat Kids SPF 100 with an SPF of 100 was the close, proximate cause of Plaintiff's deception and the fact that she was overcharged for this product.

e) Misrepresenting the SPF of a child's sunscreen is immoral for several reasons, the most obvious being that it puts children at risk of being burned, and heightens their risk of skin cancer, by relying on ineffective sunscreen. Charging a steep premium for a sunscreen that does not actually protect children from the sun also immorally deprives parents and guardians of money that could have been spent on more useful, necessary items.

f) Holding sunscreen manufacturers accountable—to sunscreen consumers—for SPF misrepresentations would deter future misrepresentations, with no perceivable drawbacks.

105.   Accordingly, Plaintiff seeks damages on behalf of herself and the class in the amount of the overcharges paid for Banana Boat Kids SPF 100.

## COUNT VI
### QUASI-CONTRACT / RESTITUTION / UNJUST ENRICHMENT
### *On behalf of the Nationwide Class and California Subclass*

106.   Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

107.   Plaintiff and the class members have conferred substantial benefits on Defendants by purchasing Banana Boat Kids SPF 100, including any profits that Defendants received from these purchases, if not the entire purchase price.

108.   Defendants have knowingly and willingly accepted and enjoyed these benefits.

109.   Defendants either knew or should have known that the payments rendered by Plaintiff and the class members were given and received with the expectation that the product would be as represented and warranted. For Defendants to retain the benefit of the payments under these circumstances is inequitable.

110.   Through deliberate misrepresentations made in connection with the advertising, marketing, promotion, and sale of Banana Boat Kids SPF 100, including representing that the product had an SPF of 100, Defendants each reaped benefits that resulted in each Defendant wrongfully receiving profits.

111.   Equity demands disgorgement of Defendants' ill-gotten gains. Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiff and the class members.

112.   As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and the class members are entitled to restitution from Defendants and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants through this inequitable conduct.

## COUNT VII
### BREACH OF AN EXPRESS WARRANTY
### *On behalf of the Nationwide Class and California Subclass*[14]

113.   Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

114.   Defendants sold the Banana Boat Kids SPF 100 sunscreen lotion in their regular course of business.

115.   Plaintiff and the class members purchased Banana Boat Kids SPF 100 sunscreen lotion.

116.   As noted above, Defendants made representations to the public, including Plaintiff, by its advertising, packaging, labeling, and other means, that Banana Boat Kids SPF 100 in fact had an SPF of 100.

117.   Defendants intended their SPF 100 representations—which figure prominently on their labels—to be relied upon by the consumers like Plaintiff that would ultimately use this product on their children.

118.   Plaintiff reasonably relied on these representations, which formed the basis of her bargain.

119.   Defendants breached this express warranty in that Banana Boat Kids SPF 100 does not in fact contain an SPF of 100, it contains an SPF far lower than 100.

---

[14]   The California Subclass's express-warranty claims arise under California Commercial Code § 2313.

120.   The SPF information provided on the label was false when the sale took place and was undiscoverable to Plaintiff and the class members at the time of purchase.

121.   All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the goods at issue.

122.   Plaintiff also provided sufficient notice to Defendants of the breach before filing suit, as indicated by paragraph 78, above.

123.   Defendants also had actual or constructive notice of the false labeling information. Defendants previously knew or should have known of the falsity of the label on Banana Boat Kids SPF 100 given—among other things—Defendants' testing of this product.

124.   To date, Defendants have refused to remedy their breach of express warranty.

125.   This breach has caused Plaintiff and the class members to suffer injuries, pay for falsely labeled products, and enter into transactions that they would not have entered into for the consideration paid. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and the class members have suffered damages and continue to suffer damages, including economic damages, in terms of the difference between the value of the product as promised and the value of the product as delivered.

126.   As a result of Defendants' breach of an express warranty, Plaintiff and the class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT VIII
### BREACH OF AN IMPLIED WARRANTY OF MERCHANTABILITY
### *On behalf of the Nationwide Class and California Subclass*[15]

127.   Plaintiff repeats and incorporates by reference all preceding paragraphs as if set forth fully herein.

128.   Defendants are merchants with respect to the goods at issue here—sunscreen lotion.

129.   By placing Banana Boat Kids SPF 100 into the stream of commerce, Defendants made—and breached—at least two implied warranties.

130.   First, to be merchantable, a product must conform with any written representations on its labels. Because the true SPF of Banana Boat Kids SPF 100 does not, in fact, comport with the advertised SPF, Defendants have breached an implied warranty of merchantability.

131.   Second, to be merchantable, Banana Boat Kids SPF 100 has to be fit for its intended purpose as a children's sunscreen lotion. Because children's sunscreen with SPFs of less than 30 are generally considered dangerous and

---

[15] The California Subclass's claims arise under California Commercial Code § 2314 and the Song–Beverly Act (Cal. Civ. Code §§ 1790, *et seq.*).

unsuitable, Defendants breached an implied warranty of merchantability by selling Plaintiff a children's sunscreen with an SPF of 24.

132. Defendants' breach of warranty has caused Plaintiff and the class members to suffer injuries, pay for falsely labeled products, and enter into transactions that they would not have entered into for the consideration paid. As a direct and proximate result of Defendants' breach of warranty, Plaintiff and class members have suffered damages and continue to suffer damages, including economic damages, in terms of the difference between the value of the product as promised and the value of the product as delivered.

133. As a result of the breach of an implied warranty of merchantability, Plaintiff and the class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief against Defendants as set forth below:

(a) certify the proposed Nationwide Class and the California Subclass as class actions pursuant to Federal Rule of Civil Procedure 23;

(b) appoint Plaintiff as representative of the class and subclass;

(c) appoint interim lead counsel as co-lead counsel for the class and subclass;

(d) enter an order for injunctive and declaratory relief as described herein;

(e) enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein or restitution, to include interest and prejudgment interest;

(f) award Plaintiff reasonable attorneys' fees and costs; and

(g) grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

DATED: October 23, 2017          Respectfully submitted,

By:  *s/ Marc L. Godino*
Marc L. Godino
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  mgodino@glancylaw.com

Kevin Landau
Brett Cebulash
Miles Greaves
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
klandau@tcllaw.com
bcebulash@tcllaw.com
mgreaves@tcllaw.com

*Attorneys for Plaintiff*